IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Rollin Michael Barber, Paula Lappe-Barber, Rachel Lappe-Biler, Pauline Gladys Bryner-Lappe and Faithful But Forgotten Friends Animal Rescue and Placement Services, Inc. | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 9-1462 |
| The Commonwealth of Pennsylvania Dept. Agriculture, Bureau of Dog Law Enforcement, Bradley D. Shields, Bruce Minick, Rebecca McDonald, Pennsylvania Society for the Prevention of Cruelty to Animals, Drew Delenick, Rickee Miller, Howard Nelson, Jesse L. Smith and John Does. | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

AMBROSE,  District Judge

**OPINION**
**and**
**ORDER OF COURT**

Plaintiffs Rollin Michael Barber, Paula Lappe-Barber, Rachel Lappe-Biler and

Pauline Gladys Bryner-Lappe are owners and operators of a non-profit animal

rescue and kennel - Faithful But Forgotten Friends Animal Placement Services,

Inc. ("the Kennel" - also a named Plaintiff in this action).  The Plaintiffs are

engaged in the rescue of dogs and other animals in and throughout Fayette

County, Pennsylvania.  Rollin Michael Barber and Rachel Lappe-Biler are co-named

1

as the rightful holders of the kennel license issued with respect to this property. According to the Complaint, the license authorized the Plaintiffs to house in excess of 500 dogs.  The Complaint names as Defendants the Commonwealth of Pennsylvania Department of Agriculture, Bureau of Dog Law Enforcement, which is apparently responsible for conducting inspections of kennels licensed by the Commonwealth, as well as various of the Bureau's employees - Bradley Shields (a regional supervisor), Bruce Minick (a Dog Warden), Drew Delenick (kennel compliance specialist), Rickee Miller (acting director) and Jessee Smith (special deputy secretary).  The Individual Commonwealth Defendants are named both in their official and individual capacities.  (The aforementioned defendants are referred to collectively as "the Commonwealth Defendants.").  The Plaintiffs also name as Defendants the Pennsylvania Society for the Prevention of Cruelty to Animals ("PSPCA"), Rebecca McDonald (a Humane Society officer) and Howard Nelson (the director of the PSPCA).

The current dispute stems from a series of inspections of the kennels which occurred throughout the 2007 calendar year.[1]  Specifically, on March 19, 2007, the Kennel passed an inspection conducted by Dog Warden Thomas Wharry. Thereafter, on September 12, 2007, Delenick and Miller conducted an inspection.

---

[1] Disputes between the parties actually commenced some years earlier.  In May of 2004, the Plaintiffs filed an Application for Special Relief in the Nature of a Preliminary Injunction against the Commonwealth, Department of Agriculture Bureau of Dog Law Enforcement. See Complaint, para. 21.  The Plaintiffs initiated suit against the Bureau on January 14, 2005. Id., para. 22.  That case was settled on May 12, 2006. Id.  The Plaintiffs believe that the Defendants in this case were motivated, in part, by a desire to retaliate against them for their having asserted these rights in the prior proceedings. Id., para. 73.

Yet no kennel inspection report was issued.  On October 17, 2007, Delenick and Shields conducted another inspection and again failed to serve an inspection report.  During this inspection, however, Delenick also allegedly approached Rachel Lappe-Biler and informed her that, although charges against the Plaintiffs were warranted, he "could make all their troubles go away if she would agree to date him." <u>See</u> Complaint, ¶ 29.

On October 18, 2007, Defendant McDonald received a complaint from Miller regarding concerns about the Kennel.  Miller, Delenick and Shields provided McDonald with information which she used in her Affidavit of Probable Cause submitted with an application for a search warrant.  A search warrant was issued. Defendants Miller, Shields, Delenick ,McDonald and Minick conducted a raid, accompanied by members of the Pennsylvania State Police, on October 25, 2007.

Approximately 204 dogs were seized during the raid.[2]  McDonald, Delenick, Shields and Miller threatened the Plaintiffs with arrest, immediate incarceration, criminal charges and fines if the Plaintiffs refused to surrender the dogs. Delenick again made inappropriate sexual advances toward Rachel Lappe-Biler, stating to her that "[y]ou know all of this can go away if you're willing to go out with me." <u>See</u> Complaint, ¶ 42.  The Plaintiffs also allege that McDonald, accompanied by two other individuals, used excessive force and brutality while gaining entrance to Plaintiff Gladys Bryner-Lappe's residence.  They allegedly threw her against the wall and pinned her there.

---

[2] The dogs have not been returned.

Several days after the execution of the warrant, Defendant Jesse L. Smith, Special Deputy Secretary for Dog Law Enforcement revoked the Kennel's license.

McDonald, Miller and Shields, together with two other Kennel Specialists, returned to the Plaintiffs' property on November 8, 2007.  Though McDonald was denied access, the others conducted an inspection and reported their findings to McDonald.  McDonald then applied for and received a second search warrant which was executed on November 9, 2007.  The Defendants seized additional animals that day, including dogs, cats and goats.  Plaintiffs represent that the animals were their personal property.

McDonald then issued 9 citations under 18 Pa. C.S.A. § 5511(c) - Pennsylvania's Cruelty to Animals statute.  The citations were distributed evenly among Rollin Michael Barber, Paula Lappe-Barber and Rachel Lappe-Biler.  Rollin Michael Barber entered a plea of no contest to one count and the charges against Paula Lappe-Barber and Rachel Lappe-Biler consequently were dismissed.

The Plaintiffs subsequently commenced this action.  The Complaint sets forth the following causes of action.  Count I - The Plaintiffs allege that the Defendants conspired in violation of 42 U.S.C. § 1985. Count II - the Plaintiffs contend that the PSPCA and the Bureau failed to take reasonable steps to protect them from the conspiratorial activity described in Count I, in violation of 42 U.S.C. § 1986.  Count III - The Plaintiffs charge the PSPCA and the Bureau with having violated various of their constitutional rights in contravention of 42 U.S.C. § 1983. Count IV - The Plaintiffs seek to hold the Defendants liable for malicious

4

prosecution under 42 U.S.C. § 1983.  Count V - Plaintiff Pauline Gladys Bryner-Lappe seeks to recover under 42 U.S.C. § 1983 and the Fourth Amendment for what she describes as an assault and battery.  Count VI - Plaintiff Rachel Lappe-Biler charges Defendant Delenick with having sexually harassed her in violation of 42 U.S.C. § 1983.  Count VII - The Plaintiffs assert a claim for intentional infliction of emotional distress, purportedly under 42 U.S.C. § 1983.  Count VIII - The Plaintiffs assert claims under the Fourth and Fifth Amendments based upon the unreasonable seizure of personal property and the seizure of such property without the award of just compensation.

The Commonwealth Defendants[3] have filed a Motion to Dismiss. See Docket No. [10].[4]  They seek the dismissal of all claims asserted against the Bureau, as well as all "official capacity" claims asserted against the individual Defendants, pursuant to Federal Rule of Civil Procedure 12(b)(1) based upon 11th Amendment immunity.  The Defendants challenge the viability of all other claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons set forth below, the Motion is granted in part and denied in part.

*Standard of Review*

---

[3]These Defendants consist of The Commonwealth of Pennsylvania, the Department of Agriculture, the Bureau of Dog Law Enforcement, Bradley D. Shields, Bruce Minick, Drew Delenick, Rickee Miller and Jessie Smith.

[4] The remaining defendants have filed a separate Motion to Dismiss, which will be addressed in a subsequent Opinion and Order.

A. Rule 12(b)(1)

"A motion to dismiss under Rule 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." Goodson v. Maggi, Civ. No. 8-44, 2009 WL 2960386 at * 4 (W.D. Pa. Sept. 14, 2009), *citing*, Patsakis v. Greek Orthodox Archdiocese of America, 339 F. Supp.2d 689, 692 (W.D. Pa. 2004) and Gould Electronics, Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). In a facial attack, "the court must consider the allegations of the complaint as true, in the light most favorable to the plaintiff, similar to a motion to dismiss." Goodson, 2009 WL 2960386 at * 4, *citing*, Mortensen, 549 F.2d at 891 and In re Kaiser Group Int'l., Inc., 399 F.3d 558, 561 (3d Cir. 2005).

B. Rule 12(b)(6)

When deciding whether to grant or deny a 12(b)(6) motion the Supreme Court has held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atlantic Co. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65,167 L.Ed.2d 929 (2007). (internal citations, footnotes and quotation marks omitted). See also, Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (a plaintiff's factual allegations must be enough to raise a right to relief above the speculative level).

Most recently, in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), the Supreme Court

held, ". . . a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949 (citations and internal quotation marks omitted).

In Iqbal, the Court specifically highlighted the two principles which formed the basis of the Twombly decision: First, for the purposes of a motion to dismiss, courts must accept as true all factual allegations set forth in the complaint, but courts are not bound to accept as true any legal conclusions couched as factual allegations.  Id. at 1949-1950. See also, Fowler v. UPMC Shadyside, 578 F.3d 203 (3d. Cir. 2009).  Second, a complaint will only survive a motion to dismiss if it states a plausible claim for relief, which requires a court to engage in a context-specific task, drawing on the court's judicial experience and common sense. Id. at 1950. Where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not shown – the complainant is entitled to relief. Id., citing, F.R.Civ.P. 8(a)(2).

*Analysis*

I. Eleventh Amendment Immunity

The Commonwealth Defendants seek the dismissal of the Plaintiffs' claims asserted against both the Commonwealth (the Department of Agriculture, Bureau of Dog Law Enforcement) and against the employees in their official capacities.  The Eleventh Amendment bars suits against a state in federal court

where the state has not consented to such action. See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 58 (1996) and Lakaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981).[5]  This immunity applies not only to the Commonwealth of Pennsylvania, but to entities which are "arms of the state" as well. See Kentucky v. Graham, 473 U.S. 159 (1985).  The Department of Agriculture is an arm of the State and, as such, is entitled to 11th Amendment immunity. See Taylor v. Vera North, Dept. Of Agriculture et al., Civ. No. 96-3666, 1996 WL 482985 at * 2 (E.D. Pa. August 15, 1996). Additionally, the Supreme Court has determined that Congress did not intend for § 1983 to overcome the sovereign immunity of states embodied in the Eleventh Amendment. See Will v. Mich. Dept'. Of State Police, 491 U.S. 58, 66-67, 109 S. Ct. 2304 (1989).  Therefore, states as well as arms of the states are not "persons" who can be subject to liability under § 1983. Id.

Eleventh Amendment immunity also extends to the Plaintiffs' claims for monetary relief against the Individual Defendants acting in their "official capacities." See Lakaris, 661 F.2d at 26.  Similarly, these Individual Defendants sued in their official capacities are not "persons" under § 1983 because the state is the real party in interest and the state is not a person under § 1983. See Hafer v. Melo, 502 U.S. 21, 26, 112 S. Ct. 358 (1991).  Indeed, Plaintiffs concede as much. See Docket No. [20], p. 5 (stating with respect to 11th Amendment immunity "[w]hile, in the instant case, specific counts against the Bureau and Defendants in their

---

[5] The Eleventh Amendment does not preclude suits for prospective injunctive relief. See Ex Parte Young, 209 U.S. 123 (1908).   Consequently, I make no ruling regarding any claim the Plaintiffs may raise in this regard.

official capacity may fail... .").

Because the Bureau and Individual Defendants acting in their official capacities are immune from suit by the 11th Amendment, this Court lacks subject matter jurisdiction over these Defendants.  All claims, including the claims set forth in Count III for violations of 42 U.S.C. § 1983,[6] asserted against them are dismissed.

II. <u>Counts I and II - 42 U.S.C. § 1985 and § 1986</u>

In Count I, Plaintiffs assert a § 1985 conspiracy claim against a number of Defendants.  The Commonwealth Defendants urge that Plaintiffs cannot successfully maintain a claim under 42 U.S.C. § 1985(3)[7] because Plaintiffs do not and cannot allege any "class-based animus." <u>See</u> <u>Farber v. City of Paterson</u>, 440 F.3d 131, 135 (3d Cir. 2006) (stating that a § 1985(3) plaintiff must allege both that the conspiracy "was motivated by discriminatory animus against an identifiable class" and that "the discrimination against the class was invidious.").  Significantly, "Plaintiff[] concedes that the Complaint fails to state a claim for conspiracy under 42 U.S.C. § 1985." <u>See</u> Docket No. [20], ¶ 11.[8]

---

[6] The Defendants separately seek the dismissal of the section 1983 claim asserted in Count III to the extent that it is asserted against the Individual Commonwealth Defendants.  The Motion is denied in this regard as moot, given that the Complaint appears only to raise such claims against the Commonwealth (and the PSPCA).

[7] Although Plaintiffs did not identify their claims with such specificity in their Complaint, they do not object to the Defendants' characterization of their claim in this manner.

[8] Plaintiffs urge that the "claim of conspiracy sounds equally in violation of 1985 and 1983.  As the conspiracy theory has been sufficiently alleged, Plaintiff would move to maintain the claim under the 1983 action." <u>See</u> Docket No. [20], para. 12.  I offer no comment as to the

Further, because the Plaintiffs fail to adequately state a § 1985(3) claim, as the Commonwealth Defendants urge, their 42 U.S.C. § 1986 claims set forth in Count II necessarily fail as well. See Magnum v. Archidocese of Philadelphia, 253 Fed. Appx. 224, 231 (3d Cir. 2007) (noting that § 1986 claims are derivative of § 1985 claims).  Again, Plaintiffs do not appear to contest this result. See Docket No. [20], ¶¶ 13-14.[9]  Accordingly, Counts I and II are dismissed.

III. Count IV - Malicious Prosecution Under § 1983

In Count IV, Plaintiffs Paula Lappe-Barber and Rachel Lappe-Biler assert claims under 42 U.S.C. § 1983 against Defendants McDonald, Miller, Delenick and Shields.  According to the Plaintiffs, these Defendants did not have probable cause to prosecute the criminal proceedings and they conducted the proceedings knowing that they could not rely on the faulty search warrant. See Complaint, ¶¶ 114-123.  Had the Defendants disclosed that the Plaintiffs rescued sick and dying animals and that the Plaintiffs had previously sued the Bureau, the Plaintiffs believe, no search warrant would have been issued. Id., ¶ 117.

The Defendants challenge the claim as deficient in several respects.  To prevail on a claim of malicious prosecution under 42 U.S.C. § 1983, the Plaintiffs must establish that:

---

sufficiency of any conspiracy claim under a Section 1983 claim.

[9] Plaintiffs do, however, allege that their "claim under 1986 sounds equally in negligence and are equally incorporated in Plaintiffs' Count III..." and that "Count III should be allowed to survive in its entirety as both a common law and negligence claim and in support of Plaintiffs' 1983 claim." See Docket No. [20], para. 14.  The sufficiency of Plaintiffs' allegations in this regard are not before me and I offer no position on them.

(1) the defendants initiated a criminal proceeding;
(2) the criminal proceeding ended in the plaintiffs' favor;
(3) the proceeding was initiated without probable cause;
(4) the defendants acted maliciously or for a purpose other than bringing the plaintiffs to justice; and
(5) the plaintiffs suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

McKenna v. City of Philadelphia, 582 F.2d 447, 461 (3d Cir. 2009), *citing*, Estate of Smith v. Mascaro, 318 F.3d 497, 521 (3d Cir. 2003).  While they attack the viability of the claim on several grounds, I need only address their contention that the Plaintiffs cannot establish that they suffered a "deprivation of liberty."

I agree with the Defendants that the Complaint fails to provide sufficient facts to show that the Plaintiffs suffered a deprivation of liberty consistent with the concept of a Fourth Amendment seizure.  Plaintiffs allege that they were issued "citations" (¶ 53), that they were deprived of personal property (¶ 121), that they have incurred legal fees and expenses (¶ 122) and that they have suffered harm to their reputation (¶ 123) as a result of the issuance of the citations.  Such losses do not rise to the level of a Fourth Amendment "deprivation of liberty." See Crawford v. Miller, Civ. No. 5-214, 2005 WL 2030478 (M.D. Pa. Aug. 4, 2005) (rejecting a malicious prosecution claim under § 1983 where plaintiff claimed only a deprivation of personal property because such deprivation did not constitute a deprivation for Fourth Amendment purposes); *citing*, Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).  See also, DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005) (finding no deprivation of liberty where the plaintiffs were only issued a summons and were never arrested, never posted bail, were

11

free to travel and did not have to report to pretrial services); and <u>Bernard v.</u> <u>Washington County</u>, 465 F. Supp.2d 461, 469 (W.D. Pa. 2006) (recognizing that while "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure," the plaintiff, who was free to travel, did not have to post bail and did not have to report to pretrial services, had not alleged facts showing a deprivation of liberty consistent with a Fourth Amendment seizure).

Simply stated, the Plaintiffs here have not alleged that they were subject to pretrial custody or some other onerous type of pretrial, non-custodial restrictions which would amount to a deprivation of liberty.  Certainly they were not arrested or incarcerated.  They allege nothing more than a loss of personal property, financial harm and injury to reputation.  As such, they cannot maintain a § 1983 claim for malicious prosecution under the Fourth Amendment. Consequently, Count IV is dismissed.

IV. <u>Count VIII - Fourth and Fifth Amendment Violations</u>

In Count VIII, Plaintiffs Paula Lappe-Barber, Rachel Lappe-Biler and Pauline Gladys Bryner-Lappe assert claims under 42 U.S.C. § 1983 for violations of their Fourth and Fifth Amendment rights.  They contend that their property was unreasonably seized and that Defendants retained such property without granting them adequate compensation.

The Defendants attack the viability of these claims in several respects.  I need only address one.  As the Defendants contend, the Plaintiffs' Complaint and

the attachments, as well as the criminal code upon which they rely, reveal that the dogs which were "seized" were done so by authority of the PSPCA - not by the Bureau or its employees.  The search warrant applications and inventory sheets identify MacDonald of the PSPCA as the charging and seizing party.  Accordingly, neither the Bureau nor its employees are proper defendants.  Count VIII is dismissed.[10]

V. Kennel License Revocation

The Defendants seek to preclude the Plaintiffs from challenging the October 29, 2007 decision revoking the kennel license held by Rollin Michael Barber and Rachel Lappe-Biler.  The Defendants urge that such a claim would be barred by virtue of the settlement agreement previously executed by the parties as well as by the existence of an available post-deprivation remedy under 3 P.S. § 459-211(c).  See Docket No. [11], p. 18.

The Defendants' Motion is denied as moot in this regard.  The Plaintiffs' Brief in Opposition to the Motion to Dismiss makes clear that the Plaintiffs do not intend to challenge the October 2007 revocation of their license. See Docket No.

---

[10]Plaintiffs respond that the Defendants can be liable because they provided MacDonald with incorrect information and that Plaintiffs have alleged a conspiracy.  I read Count VIII as asserting claims under 42 U.S.C. section 1983 for violations of the Fourth and Fifth Amendments.  To the extent Plaintiffs include the word "conspire" in the "wherefore" clause of Count VIII, they have not demonstrated to this Court that there is an actionable claim under section 1983 for a conspiracy to violate 4th and 5th Amendment rights.  To the extent that the Plaintiffs intend to assert a separate civil conspiracy claim, they need to do so by way of an Amended Complaint.

[20], p. 10.  Instead, their concern lies with actions the Defendants may take with respect to any future or prospective applications for kennel licenses.

VI. Count VII - Intentional Infliction of Emotional Distress

Count VII is entitled "Intentional Infliction of Emotional Distress." See, Complaint, p. 32.  The claim has its basis in the search which occurred on October 25, 2007. See Complaint, ¶ 139.  The Defendants contend that the doctrine of sovereign immunity protects a state official from such a claim.

I agree with the Defendants that, as a general matter, the doctrine of sovereign immunity bars tort claims against the Commonwealth, its officials and its employees when acting within the scope of their duties. 1 Pa. CSA § 2310. There are, however, nine exceptions to the sovereign immunity bar.  These exceptions are set forth at 42 Pa. C.S.A. and are to be "strictly construed and narrowly tailored." See Brown v. Blaine, 833 A.2d 1166, 1173 (Pa. Commw. 2005). Consequently, for the Defendants to successfully invoke the doctrine, they must demonstrate that their conduct does not fall within one of the exceptions to sovereign immunity and that they were acting within the scope of their employment at the time in question.

As to the first query, the tort of intentional infliction of emotional distress does not fall within one of the enumerated exceptions. See Fischer v. Pennsylvania State Police, Civ. No. 7-1653, 2009 WL 650251 at * 12 (M.D. Pa. March 10, 2009) (stating that a claim for intentional infliction of emotional distress against the Pennsylvania State Police is barred by sovereign immunity).  Because a

14

claim for intentional infliction of emotional distress against the Commonwealth Defendants is barred by the doctrine of sovereign immunity, Count VII is dismissed as to those Defendants.[11]

The Defendants must also satisfy the second query.  Sovereign immunity only extends to those employees "acting within the scope of their duties." 1 PA C.S.A. § 2310.  See also Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000).  Here, the Plaintiffs make no suggestion that the Defendants were acting in any capacity rather than in the regular course and scope of their duties.  Indeed, every indication from the Complaint is that the Individual Defendants were performing according to their prescribed duties.  Consequently, as the Complaint currently reads, the Individual Defendants are entitled to the doctrine of sovereign immunity.  The Motion to Dismiss Count VII is granted

VII. Count VI - Sexual Harassment

In Count VI, Plaintiff Rachel Lappe-Biler contends that on October 17, 2007 and again on October 25, 2007, Defendant Drew Delenick sexually harassed her.

---

[11] The Plaintiffs seek to avoid the bar of sovereign immunity by referencing 42 U.S.C. section 1983.  The Plaintiffs contend that "[t]he specific actions bringing about the emotional distress were a violation of Plaintiffs [sic] civil rights as protected under 1983.  Since Plaintiffs' claim seeks redress in 42 U.S.C. 1983, Hafer above should apply and sovereign immunity will not protect Defendants['] actions as individuals." See Docket No. [20], p. 10.  I agree with Plaintiffs that Pennsylvania's doctrine of sovereign immunity cannot preclude them from asserting a section 1983 claim against the Commonwealth Defendants.  Yet Count VII is entitled "Intentional Infliction of Emotional Distress." See Complaint, p. 37.  They cannot avoid the doctrine of sovereign immunity by claiming to assert such a cause of action within the rubric of section 1983.  Certainly the Plaintiffs have not identified any case law where a section 1983 claim is premised upon the intentional infliction of emotional distress rather than upon the violation of some underlying constitutional right or guarantee.

She claims that he abused his official position as a dog warden by making sexual advances toward her while, at the same time, suggesting that any legal troubles with the Kennel would be "forgotten" if she would succumb to his advances. See Complaint, ¶¶ 131-137.  She seeks relief under 42 U.S.C. § 1983.

Accepting for purposes of argument only that Rachel Lappe-Biler can assert such a claim under § 1983, the Defendants urge that her claim is untimely. According to the Defendants, the two year statute of limitations governing § 1983 claims expired prior to her initiation of this suit.

I am unwilling at this juncture to make such a pronouncement.  Section 1983 claims are subject to the state's statute of limitations for personal injury actions. See Sameric Corp. Of Del., Inc. v. City, 142 F.3d 582, 599 (3d Cir. 1998). Here, Pennsylvania's two year statute of limitations for personal injury claims would govern. 42 Pa. C.S.A. § 5524.  The claim accrues "when the plaintiff knew or should have known of the injury upon which its action is based." Sameric, 142 F.3d at 599.  Here, the claim is alleged to have accrued, at the latest, on October 25, 2007.

Yet it does not necessarily follow that a Complaint filed on October 25, 2009 is beyond the two-year period.  The Defendants have not addressed whether the Federal Rules of Civil Procedure apply for the purposes of computing time.  If so, Rule 6(a)(1) provides that one must exclude the day of the event that triggers the period and cautions against including the last day of the period if such day is a Saturday or Sunday.  Here, the day upon which the

16

Defendants urge the statute expired was a Sunday (October 25, 2009).  Under Rule 6(a)(1), the period would have continued to run until October 26, 2009.  The Plaintiffs had, in fact, filed by that time.  Arguably, then, the filing would have been timely.

A sister court addressing a similar issue looked to the Pennsylvania Rules of Civil Procedure in extending the period of time when a plaintiff filed a § 1983 claim.  See Stokes v. Williams, Civ. No. 8-5799, 2009 WL 959512 at * 1 (E.D. Pa. April 3, 2009) (finding plaintiff's § 1983 claim was timely filed when the statute of limitations would have expired on a Sunday and the Pennsylvania Rules of Civil Procedure allowed for an extension until Monday, the day on which the plaintiff actually filed).

Accordingly, I am unwilling, absent further briefing, to find that the Plaintiffs' claim is untimely.  The Motion to Dismiss is denied in this regard.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Rollin Michael Barber, Paula Lappe-Barber, Rachel Lappe-Biler, Pauline Gladys Bryner-Lappe and Faithful But Forgotten Friends Animal Rescue and Placement Services, Inc. | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 9-1462 |
| The Commonwealth of Pennsylvania Dept. Agriculture, Bureau of Dog Law Enforcement, Bradley D. Shields, Bruce Minick, Rebecca McDonald, Pennsylvania Society for the Prevention of Cruelty to Animals, Drew Delenick, Rickee Miller, Howard Nelson, Jesse L. Smith and John Does. | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

AMBROSE, District Judge

ORDER OF COURT

AND NOW, this 3rd day of May, 2010, after careful consideration, and for the reasons set forth in the accompanying Opinion, the Commonwealth Defendants' Motion to Dismiss (Docket No. [10]), is granted in part and denied in part, as follows.

All claims asserted against the Commonwealth Department of Agriculture, Bureau of Dog Law Enforcement, as well as all "official capacity" claims asserted against its employees, are dismissed, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(1) on the basis of sovereign immunity.

18

In addition, the claims asserted in Counts I, II, IV, VII and VIII are hereby dismissed, without prejudice. Plaintiff is entitled to file an Amended Complaint, curing any deficiencies noted in the accompanying Opinion, by no later than May 17, 2010.

The Motion is denied as moot insofar as the Commonwealth Defendants seek to prohibit the Plaintiffs from challenging the revocation of their prior license.  The Motion is also denied insofar as the Commonwealth Defendants seek the dismissal of Count VI on the basis of its timeliness.  As set forth in the Opinion, the Court is unprepared at this juncture to rule that the claim is untimely.

BY THE COURT:

/s/Donetta W. Ambrose
Donetta W. Ambrose,
U.S. District Judge